UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 08-1292 CAS | | | | Date | April 6, 2009 |
|---|---|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | | | |
| Interpreter | N/A | | | | | |
| CATHERINE JEANG | | Not Present | | | Amber Garza, Not Present | |
| *Deputy Clerk* | | *Court Reporter/Recorder, Tape No.* | | | *Assistant U.S. Attorney* | |
| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. Ret. |
| CHARLEY WILLIAM ELLISON, JR. | NOT | | X | MYRA SUN, DFPD | NOT | X |

Proceedings:   **(IN CHAMBERS) DEFENDANT'S MOTION TO SUPPRESS STATEMENT** (filed 02/17/09)

## I.   INTRODUCTION

On October 31, 2008, defendant Charley William Ellison, Jr., was charged in a six count indictment with (1) possession of firearms following a domestic violence conviction, 18 U.S.C. § 922(g)(9); (2) possession of a machinegun, 18 U.S.C. § 922(o)(1)[1]; (3) possession of an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d); (4) possession of an unregistered machinegun, 26 U.S.C. § 5861(d)[2]; (5) possession of a firearm with an obliterated serial number, 26 U.S.C. § 5861(h); and (6) forfeiture, 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). These items were seized from defendant's residence on September 30, 2008.

On February 17, 2009, defendant filed the instant motion for an order suppressing a statement he made to police after his arrest on September 20, 2008. On March 2, 2009, the government filed its opposition. A hearing was held on April 6, 2009. After carefully considering the parties' arguments, the Court finds and concludes as follows.

---

[1] The government concedes that further testing by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has determined that the weapon that forms the basis for this charge is not fully automatic and does not qualify as a machinegun pursuant to 26 U.S.C. § 5845(b). The government asserts that it will seek to dismiss this count before trial.

[2] The government asserts that for the reasons stated in footnote 1, <u>supra</u>, this count will also be dismissed before trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

## II. BACKGROUND

On or about September 28, 2008, Riverside County Superior Court Judge Christian F. Thierbach issued a search warrant that authorized law enforcement officers to search defendant's residence, located at 14594 Cabazon St., Cabazon, California, as part of an investigation of illegal firearms possession and gang activity at that location.

On September 30, 2008, officers from the Gang Task Force, Riverside County Special Enforcement Bureau, and ATF agents executed the warrant and found an AK-47 rifle, a Marlin .22 rifle, a Marlin 783 .22 caliber bolt action rifle, a 12 gauge Mossberg pump shotgun with a pistol grip and a sawed-off barrel, a New England Firearms 410 shotgun, a Colt 32 ACP semi-automatic handgun, a .40 Glock 22 semi-automatic handgun, a .45 caliber Firestorm semi-automatic handgun with a ground off serial number, two authentic "pineapple type" hand grenades without an explosive component. The officers also found items indicating gang affiliation, including photos and tagged liquor bottles. Defendant, his wife, his three children, and seven other individuals were present in defendant's residence when the warrant was executed.

Deputy Sean Freeman arrested defendant and transported him to the Banning Police Department, along with the other adults who were present in defendant's residence when the warrant was executed, where he was interviewed by ATF Special Agent Adam Rudolph. The government contends that defendant signed a written waiver of his Miranda rights, and admitted that he owned the firearms and grenades found at his residence. The government further contends that defendant admitted that he was once a member of the "Bloods" gang, but denied active gang membership.

Defendant contends that once he was placed in a room in the Banning Police Department for questioning, he told the officers that he "didn't want to say anything that would incriminate" him and asked "should I have a lawyer?" Defendant further contends that the officers told him that they just needed him to answer some questions and that if no one took responsibility for the guns found at the residence (1) all of the adults present at defendant's residence when the warrant was executed would remain in jail and (2) defendant's children would be taken by Children's Protective Services. Defendant argues that he wanted an attorney and wanted to avoid incriminating himself and signed a Miranda waiver only after the officers threatened to take his children. The waiver that defendant signed stated his Miranda rights and then stated that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

Opp'n, Ex. B.

### III. LEGAL STANDARD

#### A. Voluntary Statement

"In criminal trials, in the courts of the United States, whenever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment ... commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'" Missouri v. Seibert, 542 U.S. 600, 607 (2004) (internal citations omitted). To reduce the risk of coerced confessions, "this Court in Miranda concluded that 'the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." Id.

In determining whether a statement made to police was voluntary, a court must ask "whether a defendant's will was overborne by looking at the totality of all the surrounding circumstances." Doody v. Schiro, 548 F.3d 847, 858 (9th Cir. 2008) (internal quotations and citations omitted). The assessment of the totality of the circumstances may include consideration of the length and location of the interrogation; evaluation of the maturity, education, physical and mental condition of the defendant; and determination of whether the defendant was properly advised of his Miranda rights. Id. at 859.

A Miranda warning and a waiver are not dispositive on the issue of voluntariness. Id. ("[A]lthough adequate Miranda warnings provide a measure of protection against coercion in custodial police interrogations, the protection actually provided in any given case depends on how effective the warnings as given and implemented were in conveying their layered messages."). However, giving Miranda warnings and obtaining a waiver has "generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." Seibert, 542 U.S. at 608-09.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

 B. **Right to Counsel**

 The right to counsel recognized in <u>Miranda</u> is sufficiently important to suspects in criminal investigations, that it "requir[es] the special protection of the knowing and intelligent waiver standard." <u>Edwards v. Arizona</u>, 451 U.S. 477, 483 (1981). If a suspect effectively waives his right to counsel after receiving the <u>Miranda</u> warnings, law enforcement officers are free to question him. <u>North Carolina v. Butler</u>, 441 U.S. 369, 372-376 (1979). However, if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. <u>Davis v. United States</u>, 512 U.S. 452, 458 (1994).

 Invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." <u>Id.</u> at 459. If a suspect makes a reference to an attorney that is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." <u>Id.</u>

**IV. DISCUSSION**

 A. **Voluntariness of Defendant's Statement**

 Defendant argues that his statement to law enforcement officials should be suppressed because his signed <u>Miranda</u> waiver was involuntary. Mot. at 5. Defendant contends that his fear "that his children would be taken from him and put into foster care . . . renders his post-arrest statement to the police invalid, and it must be suppressed." Mot. at 5-6 (citing <u>United States v. Moreno</u>, 891 F. 2d 247, 250 (9th Cir. 1989); <u>United States v. Tingle</u>, 658 F.2d 1332, 1336 (9th Cir. 1981)).

 The government responds that defendant was fully advised of his <u>Miranda</u> rights, he stated that he fully understood those rights, and he signed a written waiver of those rights. Opp'n at 4. The government argues that this was not the first time defendant was advised of his <u>Miranda</u> rights given that he is 29 years old and was previously convicted for domestic violence in 2005 and arrested for driving under the influence in 2008. <u>Id.</u> The government further argues that the law enforcement officers at the scene did not make any threats, use any coercive tactics, or make any promises or representations about charges that might or might not be brought against defendant. <u>Id.</u> The government contends that the "totality of the circumstances surrounding defendant's waiver – including the full advisement of rights, defendant's statement that he understood those rights, defendant's written waiver, defendant's age, defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

experience with the law, and the lack of any coercive tactics – point to a knowing and voluntary waiver of his rights." Id. (citing United States v. Andaverde, 64 F.3d 1305, 1313-14 (1995)).

The Court concludes that defendant voluntarily waived his Miranda rights. Defendant was advised of his Miranda rights and he signed a written waiver indicating that he understood those rights. Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir. 1990) ("The written waiver is particularly strong evidence that the waiver is valid"). Furthermore, law enforcement officials did not use "physical or psychological pressure" to elicit the waiver and defendant has not otherwise demonstrated "police overreaching." Cox v. Del Papa, 542 F.3d 669, 675 (9th Cir. 2008). Lastly, defendant has a criminal history and has had prior experience with Miranda. Therefore, considering totality of the circumstances, the government has met its burden of showing, by a preponderance of the evidence, that defendant's waiver of his Miranda rights was voluntary. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

### B.   Right to Counsel

Defendant argues that his post-arrest statement was involuntary because law enforcement officers ignored his request for counsel. Mot. at 7. Defendant contends that by asking the officers whether he should have a lawyer and insisting that he did not want to incriminate himself, he "clearly expressed a desire to deal with police only through counsel." Id. (citing Shedelbower v. Estelle, 885 F.2d 570, 571 (9th Cir. 1989); Smith v. Endell, 860 F.2d 1528, 1529-1531 (9th Cir. 1988)).

The government responds that defendant did not invoke his right to counsel. Opp'n at 5. The government argues that defendant asking the officers if he "should have a lawyer" is not an invocation of his right to counsel. Id. at 5 (citing Norman v. Ducharme, 871 F.2d 1483 (9th Cir. 1989)). The government contends that defendant's question about whether he should speak to a lawyer does not even rise to the level of an equivocal request for counsel. Id. (citing United States v. Ogbuehi, 18 F.3d 807, 813-14 (9th Cir. 1994)). The government further contends that Agent Rudolph did not advise defendant as to whether he should speak to a lawyer and that defendant's actions in signing the waiver and giving a statement clearly indicated that he was not interested in speaking with a lawyer. Moreover, the government argues that nowhere in Deputy Freeman's report, or any other report that has been provided to the government, is there any record of defendant's alleged request for counsel. Id. at 5 (citing Ex. A, Arrest Report).

The Court concludes that defendant did not invoke his right to counsel. Defendant's question "should I have a lawyer" is not sufficient to invoke his right to counsel. Ogbuehi, 18 F.3d at 813 (holding that defendant's questions "do I need a lawyer" or "do you think I need a lawyer" do not rise to the "level of even an equivocal request for an attorney."). Furthermore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

defendant's statement that he did not want to incriminate himself does not alter this conclusion because, as the Court concluded supra, he voluntarily signed a written waiver of his Miranda rights shortly after making that statement.

## V. CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendant's motion to suppress his statement to law enforcement.

IT IS SO ORDERED.

|  |  |
|---|---|
| 00 : 00 |  |
| Initials of Deputy Clerk | CMJ |

cc:  Pretrial Services